IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:22-CV-148-D

| | |
|---|---|
| SUZANNE FOX POPPER<br>as Executrix of the ESTATE OF<br>JANICE FOX,<br><br>     Plaintiff,<br><br>  v.<br><br>THE HARTFORD FINANCIAL<br>SERVICES GROUP, INC., and<br>HARTFORD LIFE AND ACCIDENT<br>INSURANCE COMPANY,<br><br>     Defendants. | **ORDER** |

On August 19, 2022, Suzanne Fox Popper ("Popper" or "plaintiff"), in her role as executrix of the estate of Janice Fox ("Fox"), filed this action seeking to recover $40,000 in death benefits under an insurance policy. Fox died after a truck hit Fox while she was walking in the parking lot of the New Hanover Regional Medical Center. Hartford Financial Services Group, Inc., and Hartford Life and Accident Insurance Company (collectively "defendants") refused to pay the $40,000 under the policy after concluding that the accident was not a "Covered Accident." In Popper's complaint, Popper alleges violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA") and breach of contract [D.E. 1].

On October 17, 2022, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted [D.E. 12] and filed a memorandum in support [D.E. 13]. See Fed. R. Civ. P. 12(b)(6). On November 1, 2022, Popper responded in opposition [D.E. 16]. On November 15, 2022, defendants replied [D.E. 17]. In this case, the court must decide whether the

New Hanover Regional Medical Center parking lot is an "open public street or highway" within the meaning of the insurance policy. Because the hospital's parking lot is not an "open public street or highway" under the policy, the court grants defendants' motion to dismiss and dismisses the complaint with prejudice.

I.

On April 5, 2022, at approximately 9:00 p.m., a Ford F-150 pick-up truck struck and killed Fox while Fox was walking to her car in the parking lot of New Hanover Regional Medical Center. See Compl. [D.E. 1] ¶ 20; [D.E. 1-3] 4; [D.E. 1-6] 7–8. When the accident occurred, it was dark and raining. See [D.E. 1-6] 7–8. The driver never saw Fox. See id. The hospital parking lot was intended for those working at the hospital or visiting the hospital, but was open to the public. Fox died at the scene. See Compl. at ¶ 20. The police report stated that the motorist was at fault for Fox's death and identified Fox as a pedestrian. See id. at ¶ 22; [D.E. 1-3]; [D.E. 1-6] 7–8.

When Fox died, Fox held a AAA Classic Care Accident Insurance Rewards Plan ("the Plan") insured through defendants. See Compl. ¶¶ 13–16. The Plan contained an accidental death benefit. See id. at ¶ 18. The death benefit under the Plan was $40,000. See id. at ¶ 24.

The Plan contained a definitions section explaining what kind of events it included as a "Covered Accident." See id. at ¶ 25. The Plan defined "Pedestrian" as "You or Your Dependents while You or they are standing or walking on an open public street or highway." Id. at ¶ 27; [D.E. 1-5] 13. The Plan did not define "open public street or highway." See Compl. ¶ 28. Popper contends that the public parking lot area where the truck struck and killed Fox qualifies as an "open public street" under the policy, thus qualifying Fox for death benefits as a "pedestrian." See id. at ¶¶ 33–36.

2

On May 11, 2022, Popper submitted a claim to defendants for accidental death benefits under the Plan. See id. at ¶ 37. On June 29, 2022, defendants sent a letter to Popper denying the claim. See id. at ¶ 38. In the letter, defendants explained that Fox was struck in a parking lot, not an open public street or highway, and thus her estate was not eligible to recover the accidental death benefits under the Plan. See id. Popper responds that defendants denied benefits based on "hyper-technical" interpretation of the Plan. See id. at ¶ 40. Popper seeks relief for breach of contract and a violation of the UDTPA. See id. at ¶¶ 46–62.

II.

Defendants move to dismiss under Rule 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

3

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

A.

Popper alleges violations of the UDTPA and statutory good faith under N.C. Gen. Stat. 58-63-15 (11). Although N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action, a plaintiff may obtain relief under the UDTPA for violations of N.C. Gen. Stat. § 58-63-15(11). See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 69–71, 529 S.E.2d 676, 682–83 (2000); see also Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018); Burch v. Lititz Mut. Ins. Co., No. 7:12-CV-107, 2013 WL 6080191, at *8 (E.D.N.C. Nov. 19, 2013) (unpublished). The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To state an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019) (collecting cases); Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009) (same); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc.,

4

362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). A plaintiff need not "show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (cleaned up); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981). However, a "mere breach of contract, even if intentional, is not an unfair or deceptive act[.]" Waddell v. U.S. Bank Nat'l Ass'n, 395 F. Supp. 3d 676, 684 (E.D.N.C. 2019) (collecting cases); see PCS Phosphate Co. v. Norfolk S. Corp., 559 F.3d 212, 224 (4th Cir. 2009); Repress v. Crop Prod. Servs., Inc., No. 4:15-CV-00176, 2016 WL 3821163, at *5 (E.D.N.C. July 13, 2016) (unpublished); see SciGrip, 373 N.C. at 427, 838 S.E.2d at 34; Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42, 626 S.E.2d 315, 323 (2006); Mitchell v. Linville, 148 N.C. App. 71, 75, 557 S.E.2d 620, 623–24 (2001); Branch Banking & Tr. Co. v. Thompson, 107 N.C. App. 53, 61–62, 418 S.E.2d 694, 700 (1992).

Conduct violating N.C. Gen. Stat. § 58-63-15(11) violates the UDTPA. Such "conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Barbour, 361 F. Supp. 3d at 573, Walker, 362 N.C. at 70–71, 653 S.E.2d at 398–99; Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Although N.C. Gen. Stat. § 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a UDTPA claim does not. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44

5

(M.D.N.C. 2002).

North Carolina law "does not permit a party to transmute a breach of contract claim into a ... UDTPA claim ... because awarding punitive or treble damages would destroy the parties' bargain...." PCS Phosphate, 559 F.3d at 224; see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases). However, if substantial aggravating circumstances accompany a breach of contract, then those circumstances can create an UDTPA claim. See Bartolomeo v. S.B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989); United Roasters, Inc. v. Colgate-Palmolive Co., 649 F.2d 985, 992 (4th Cir. 1981); Burrell v. Sparkkles Reconstruction Co., 189 N.C. App. 104, 111, 657 S.E.2d 712, 717 (2008); Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700. Generally, substantial aggravating circumstances include some element of deception, such as forged documents, lies, or fraudulent inducements. See Stack v. Abbott Labs., Inc., 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013); Eastover Ridge, LLC v. Metric Constructors, Inc., 139 N.C. App. 360, 368, 533 S.E.2d 827, 833 (2000); Kerry Bodenhamer Farms, LLC v. Nature's Pearl Corp., No. 16 CVS 217, 2017 WL 1148793, at *7 (N.C. Super. Ct. Mar. 27, 2017) (unpublished).

Popper alleges that defendants engaged in unfair claim settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11). See Compl. ¶¶ 51–53. Specifically, Popper alleges violations of sections:

> d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
>
> . . .
>
> f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear[.]

N.C. Gen. Stat. § 58-63-15(11); see Compl. ¶¶ 51–52.

6

As for Popper's section (d) claim, the complaint merely invokes N.C. Gen. Stat. § 58-63-15(11)(d) with no supporting allegations regarding any alleged deficient investigation of defendants. See Compl. ¶ 51. Indeed, the only dispute alleged in the complaint is whether the hospital parking lot constitutes an "open public street or highway" under the Plan. Neither party disputes the cause of Fox's death, the physical location of Fox's death, or any other underlying facts. To the extent that Popper alleges that defendants ignored the facts surrounding Fox's death when denying coverage, defendants' letter explaining their denial of benefits demonstrates that defendants reviewed the death certificate, police report, and the language of the Plan when making the determination. See [D.E. 1-7].

Popper also argues that defendants violated section (d) by failing to "investigate the meaning of [the contested Plan terms] under North Carolina law before denying Plaintiff's claim." [D.E. 16] 15. Popper cites no authority for her argument that a party to a contract has a duty under the UDTPA to seek out analogues of contractual terms in the North Carolina General Statutes before construing the meaning of those terms. Moreover, Popper does not allege that the Plan, as a contract, contains a provision incorporating the North Carolina General Statutes to define terms. Therefore, Popper has failed to plausibly allege a violation under section (d).

As for Popper's section (f) claim, Popper contends that defendants' "hyper-technical" interpretation of the Plan and disagreement with Popper's "common sense reading" of the Plan constitutes willful bad faith. See Compl. ¶¶ 40–42. Popper also reincorporates her argument regarding defendants' alleged duty to seek and adopt definitions from the North Carolina General Statutes. See [D.E. 16] 16–17.

Section (f) imposes liability when an insurer fails to settle after liability becomes "reasonably clear." N.C. Gen. Stat. § 58-63-15(11)(f). However, just because the "Plaintiff may disagree with

7

the assessment of Defendant . . . does not transform a run of the mill insurance dispute into a tort cognizable under Section 75–1.1." Clear Creek Landing Home Owners' Ass'n Inc. v. Travelers Indem. Co., No. 1:12-CV-157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (unpublished). Moreover, Popper's insistence that defendants had to use the North Carolina General Statutes to reach the "proper definition" of a contractual term demonstrates that Popper's entitlement to the death benefit under the Plan was not clear and unambiguous.

To the extent that Popper believes that defendants' alleged breach of contract constitutes an independent UDTPA violation, Popper has failed to plausibly allege an aggravating factor to the breach of contract. Merely alleging that defendants intentionally breached a contract is not sufficient. See, e.g., Bartolomeo, 889 F.2d at 535; United Roasters, Inc., 649 F.2d at 992; Kerry Bodenhamer Farms, LLC, 2017 WL 1148793, at *7; Burrell, 189 N.C. App. at 111, 657 S.E.2d at 717; Branch Banking & Tr. Co., 107 N.C. App. at 62, 418 S.E.2d at 700. Popper's unsupported belief that discovery will reveal some "rationale and motivation for denying" her request for $40,000 does not suffice to survive dismissal. See Iqbal, 556 U.S. at 677–80; Twombly, 550 U.S. at 554–63. Thus, the court dismisses Popper's UDTPA claim.

B.

Popper argues that defendants breached their contractual obligations under the Plan. See [D.E. 16] 7–10. Under North Carolina law, a breach of contract claim involves two elements: (1) the existence of a valid contract and (2) breach of the terms of that contract. See McLamb v. T.P., Inc., 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005); Poor v. Hill, 138 N.C. App. 19, 26, 530 S.E.2d 838, 845 (2000). A breach of a contract occurs where there is "[n]on-performance[,] . . . unless the person charged . . . shows some valid reason which may excuse the non-performance; and the burden of doing so rests upon him." Cater v. Barker, 172 N.C. App.

8

441, 447, 617 S.E.2d 113, 117 (2005), aff'd, 360 N.C. 357, 625 S.E.2d 778 (2006) (quotation omitted); see Abbington SPE, LLC v. U.S. Bank, Nat'l Ass'n, 352 F. Supp. 3d 508, 516–17 (E.D.N.C. 2016), aff'd, 698 F. App'x 750 (4th Cir. 2017) (per curiam) (unpublished). An insurance policy is a contract, and the policy's provisions govern the rights and duties of the contracting parties. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 562 (1990). The insured party "has the burden of bringing itself within the insuring language of the policy." Nelson v. Hartford Underwriters Ins. Co., 177 N.C. App. 595, 606, 630 S.E.2d 221, 229 (2006) (quotation omitted).

Popper and the defendants disagree on whether the place where Fox was struck and killed constitutes an "open public street or highway" under the Plan. Defendants cite dictionary definitions and argue that a parking lot does not fit the definitions of "open public street or highway." See [D.E. 17] 7. Popper responds that the court should use the definitions from N.C. Gen. Stat. § 20-4.01(13) and N.C. Gen. Stat. § 20-4.01(32). See [D.E. 16] 4.

"The interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction." Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 739, 673 S.E.2d 787, 790 (2009) (quotation omitted); see Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970); N.C. Farm Bureau Mut. Ins. Co. v. Mizell, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000). "[T]he intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts in the interpretation of such instruments." McDowell Motor Co. v. N.Y. Underwriters Ins. Co., 233 N.C. 251, 253, 63 S.E.2d 538, 540 (1951). When interpreting an insurance policy, the court may consider "the character of the business of the insured and the usual hazards involved therein in ascertaining

9

the intent of the parties." Fulford v. Jenkins, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (quotation omitted); see McDowell Motor Co., 233 N.C. at 253, 63 S.E.2d at 540. A court must construe an insurance contract as a reasonable person in the position of the insured would have understood the insurance contract. See Register v. White, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004); Marriott Fin. Servs., Inc. v. Capitol Funds, Inc., 288 N.C. 122, 143, 217 S.E.2d 551, 565 (1975).

Where a policy defines a term, that definition controls. See Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299, 524 S.E.2d 558, 563 (2000); Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505–06, 246 S.E.2d 773, 777 (1978). Where a policy does not define a term, a court gives "nontechnical words . . . their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." Woods, 295 N.C. at 506, 246 S.E.2d at 777; see Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Brown v. Lumbermens Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); Grant v. Emmco Ins. Co., 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978). If the language of a policy is ambiguous, a court resolves "all doubt or uncertainty as to the meaning of the contract . . . in favor of the insured." Register, 358 N.C. at 700, 599 S.E.2d at 556 (quotations omitted). Accordingly, "[e]xclusions . . . are not favored, and are to be strictly construed to provide the coverage which would otherwise be afforded by the policy." Maddox v. Colonial Life & Acc. Ins. Co., 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981).

Popper argues that because the truck struck Fox in the "vehicular travel portion of the parking lot, which was open to the public," then Fox falls within the "open public street" language of the contract. [D.E. 16] 2. According to the complaint and accompanying police report, the truck struck Fox in a parking lot and not on a feeder street or road leading to the parking lot or crossing a street with a parking lot on the other side. See Compl. ¶¶ 21 ("Fox was walking in an area of the parking

lot.") (emphasis added); [D.E. 1-3] 3 ("I was flagged down to the parking lot.") (emphasis added). Therefore, although Popper maintains that certain parts of a parking lot can constitute an "open public street," Popper concedes that the accident occurred in the "parking lot."[1]

Common sense and ordinary understanding lead to the conclusion that a parking lot unambiguously does not constitute an "open public street or highway." Webster's dictionary defines "street" as a "public thoroughfare [especially] in a city, town, or village . . . ." Street, WEBSTER'S THIRD NEW INT'L DICTIONARY 2259 (3d ed. 1993).[2] Webster's dictionary defines "parking lot" as "an outdoor lot for the parking of motor vehicles." Id. at Parking Lot, 1642. The key contrast between the definitions matches common sense understanding in ordinary speech: an open public street is a thoroughfare to get from one location to another while a parking lot is where you park your car when you arrive at a destination. Indeed, one would never think to describe a parking lot as a "thoroughfare," which is a key term in the definition of street. See id. at Street, 2259. Moreover, the terms "street" and "parking lot" are not used interchangeably, and everyday speech often draws distinctions between the two. For example, in ordinary speech, when an open public street has available places for cars to park near the sidewalk, this is called "street parking," not a "parking lot." Therefore, in ordinary speech, the terms "street" and "highway" do not include "parking lot."

Popper ignores these common usages and definitions. Instead, Popper contends that North Carolina law requires the court to rewrite the contract using statutory provisions governing the

---

[1] The complaint and exhibits do not state where exactly in the parking lot the accident occurred. Nonetheless, Popper's term "vehicular travel portion of the parking lot" cannot do the work Popper seeks. Parking lots, by definition, are intended to be filled with vehicles going in and out of parking spaces and in and out of the parking lot. Thus, the entire parking lot constitutes a "vehicular travel portion."

[2] Webster's does include an old definition of "street" that includes any paved road, but labels such definition as "obsolete." See Street, WEBSTER'S THIRD NEW INT'L DICTIONARY 2259 (3d ed. 1993).

11

powers and duties of the North Carolina Department of Motor Vehicles ("DMV"). See N.C. Gen. Stat. § 20-4.01(13), (32); see also N.C. Gen. Stat. § 20-1 (outlining the scope of section 20 to set out the powers and duties of the DMV). First, Popper cites N.C. Gen. Stat. § 20-4.01(13), which defines "highway" and "street" as "[t]he entire width between property or right-of-way lines of every way or place of whatever nature, when any part thereof is open to the use of the public as a matter of right for the purposes of vehicular traffic." Id. Popper also cites N.C. Gen. Stat. § 20-4.01(32), which states that areas "used by the public for vehicular traffic" are considered to be "Public Vehicular Areas." Id. Finally, Popper cites N.C. Gen. Stat. § 20-4.01(32)(a)(1), which states that the parking lot of "any public or private hospital" is a "Public Vehicular Area." Id. Cobbling these provisions together, Popper argues that North Carolina law makes it clear and unambiguous that the "parking lot" is "an open public street or highway." See [D.E. 16] 6–7.

These cited statutes concerning the powers and duties of the DMV do not support Popper's argument. At best, these statutes lump public parking lots in hospitals, streets, and highways together under the blanket term "Public Vehicular Areas." The Plan, however, does not use the term "Public Vehicular Areas."

Courts in North Carolina use ordinary meanings of words when interpreting contracts. North Carolina law does not instruct courts to ignore plain meaning and cobble together a collage of statutory language to define contractual terms. See Woods, 295 N.C. at 506, 246 S.E.2d at 777; Gaston Cnty. Dyeing Mach. Co., 351 N.C. at 299, 524 S.E.2d at 563; Brown, 326 N.C. at 392, 390 S.E.2d at 153; Grant, 295 N.C. at 42, 243 S.E.2d at 897. North Carolina's approach comports with the approach in other states. See State Farm Mut. Auto. Ins. Co. v. Spangler, __ F.4th __, __, 2023 WL 2748380, at *8 (11th Cir. 2023) (interpreting Florida law and concluding that "we see no reason to redefine a Policy term by incorporating a statutory definition"); M.P. by & through Zipfel v.

12

Trexis One Ins. Corp., 652 S.W.3d 685, 690 (Mo. Ct. App. 2022) (noting that "several 'public road' definitions Missouri courts have applied in different legal contexts . . . may or may not be relevant or helpful in insurance cases, but they certainly are not controlling as to the definition of 'public road' in an insurance policy." (emphasis omitted)) Moreover, according to the cited North Carolina statutes, the definitions in that section simply "set out the powers and duties of the [DMV]." N.C. Gen. Stat. § 20-1. Popper cites nothing to suggest that the North Carolina General Assembly or the Supreme Court of North Carolina intended courts to use these statutes as universal definitions applicable to all aspects of North Carolina law or to govern terms in contracts. Sitting in diversity, this court declines to "create or expand" North Carolina public policy by adopting Popper's novel and unsupported theory of contract interpretation. Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999); First Protective Ins. Co. v. Rike, 516 F. Supp. 3d 513, 524–25 (E.D.N.C. 2021); Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 575 n.1 (E.D.N.C. 2019). Moreover, this court predicts that the Supreme Court of North Carolina would not use this statutory language concerning the powers and duties of the DMV to interpret this insurance policy. See Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016); Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005).

    Fox's death was a tragic accident. According to ordinary definitions of the relevant terms in the Plan, the parking lot where Fox died was not an "open public street or highway" under the Plan. Fox's accidental death in the parking lot is not covered under the plain meaning of the

contract. Because defendants did not breach the contract by denying coverage, the court dismisses Popper's breach of contract claim.

### III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 12] and DISMISSES WITH PREJUDICE the complaint. The clerk shall close the case.

SO ORDERED. This 18 day of April, 2023.

JAMES C. DEVER III
United States District Judge